

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00354-CV

_____

IN THE INTEREST OF I.Z., A CHILD

---

On Appeal from the 16th District Court
Denton County, Texas
Trial Court No. 24-1547-16

---

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

The Department of Family and Protective Services sued for conservatorship of seven of I.Z.'s eight children and to terminate her parent–child relationship with them. I.Z. (Mother) appeals from the trial court's order terminating her parental rights to one of her daughters—I.Z. (Iris)[1]—and appointing the Department as Iris's permanent managing conservator. In this ultra-accelerated appeal,[2] Mother raises two issues: (1) the termination order is void because the trial court never extended the statutory dismissal deadline under Texas Family Code Section 263.401 and because the monitored-return order returning four of Iris's half-siblings to their father under Family Code Section 263.403 and extending the dismissal deadline was insufficient to retain the trial court's jurisdiction over Iris and the other two children, and (2) Mother's appointed trial counsel was ineffective. We will affirm.

## I. Background

In early January 2023, the Department received a referral when Iris tested positive for amphetamines at birth. A few days later, the Department received a second referral involving the family because one of the other children often came to

---

[1]We refer to the children using aliases and refer to family members and others either by their initials or their relationship to the children. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

[2]*See* Tex. R. Jud. Admin. 6.2(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. F app. (requiring appellate court to dispose of appeal from judgment terminating parental rights, so far as reasonably possible, within 180 days after notice of appeal is filed).

school hungry and without wearing shoes. A Department investigator visited the family's home and—after examining the home, observing the children, and interviewing Mother and Mother's mother—became concerned about Mother's drug use,[3] about the home's condition, and about whether the children were being adequately fed and cared for. The Department thus implemented a safety plan. After Mother violated the safety plan three times, the Department decided to remove the children from the home.

On February 22, 2023, the Department sued for conservatorship and to terminate Mother's parental rights and the parental rights of the children's fathers. That same day, the trial court signed a temporary order appointing the Department as the children's temporary sole managing conservator. At the time, Iris was just over a month old, and her six siblings—D.C. (Dana), J.C. (James), G.M. (George), E.C. (Edward), D.M.-C. (Debra), and D.C. (Diana)—ranged in age from almost two years old to 15 years old. Iris was placed in a foster home with D.B. and L.B. (the Fosters).

Based on the date the trial court signed the temporary order appointing the Department as the children's temporary managing conservator—February 22, 2023— the case's automatic dismissal date under Family Code Section 263.401 was February 26, 2024. *See* Tex. Fam. Code Ann. § 263.401(a). On January 25, 2024, the trial court signed an "Order for Monitored Return" returning George, Edward, Debra, and

---

[3]Mother tested positive for methamphetamines soon after the investigator's visit.

Diana to their father M.M. on a monitored basis. *See id.* § 263.403. The order extended the dismissal date to July 24, 2024, and set the case for trial on July 8, 2024. *See id.* §§ 263.401, .403. Aside from the case style, the order did not mention the other three children—Dana and James, whose alleged father is J.D., and Iris, whose alleged father is A.P.

On February 16, 2024, the trial court severed the case involving Dana, James, and Iris into a separate cause number. The Fosters intervened on February 23, 2024. *See* Tex. R. Civ. P. 60. The Fosters sought, among other things, that Mother's and A.P.'s parental rights to Iris be terminated and that the Department be appointed as Iris's permanent managing conservator.

On July 5, 2024, the trial court severed the case involving Dana and James into a separate cause number. The case involving the termination of Mother's and A.P.'s parental rights to Iris was tried to a jury starting on July 9, 2024.[4] A.P. did not appear.

After a four-day trial, the jury found by clear and convincing evidence that Mother (1) had knowingly placed or had knowingly allowed Iris to remain in conditions or surroundings that endangered her physical or emotional well-being; (2) had engaged in conduct or had knowingly placed Iris with persons who engaged in conduct that endangered her physical or emotional well-being; and (3) had failed to

---

[4]During the case's pendency, Mother filed two mandamus petitions, both of which we dismissed. *See In re I.Z.*, Nos. 02-24-00297-CV, 02-24-0030-CV, 2024 WL 3491780, at *1 (Tex. App.—Fort Worth July 22, 2024, orig. proceedings) (mem. op.).

comply with the provisions of a court order that specifically established the actions necessary for Mother to obtain the return of Iris, a child who had been in the Department's permanent or temporary managing conservatorship for not less than nine months as the result of the child's removal from the parent under Family Code Chapter 162 due to the child's abuse or neglect. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (O). The jury also found by clear and convincing evidence that termination of Mother's parental rights to Iris was in Iris's best interest. *See id.* § 161.001(b)(2). Based on the jury's findings against Mother, the trial court signed an order terminating Mother's parental rights to Iris and appointing the Department as Iris's permanent managing conservator.[5]

Mother timely moved for a new trial, which was overruled by operation of law. Mother has appealed and argues in two issues that the termination order is void because the trial court lost jurisdiction over the case and that her trial counsel was ineffective. We address each of these issues in turn.

## II. The Trial Court's Jurisdiction

In Mother's first issue, she contends that the trial court's termination order is void because the trial court failed to begin the trial before it lost jurisdiction over the case. Mother argues that the trial court lost jurisdiction because (1) it did not properly

---

[5]In its termination order, the trial court found that A.P., "although duly and properly notified, did not appear and wholly made default." The trial court also terminated his parental rights to Iris. A.P. is not a party to this appeal.

extend the statutory dismissal deadline pursuant to Family Code Section 263.401(b) and (2) the monitored-return order returning four of Iris's half-siblings to their father and extending the dismissal deadline was ineffective to extend the trial court's jurisdiction over the remaining children.

We have jurisdiction to determine whether an order or judgment underlying an appeal is void and to make appropriate orders based on that determination. *See Freedom Comm'ns, Inc. v. Coronado*, 372 S.W.3d 621, 623 (Tex. 2012). A judgment is void when the court that rendered it lacked subject-matter jurisdiction. *In re D.S.*, 602 S.W.3d 504, 512 (Tex. 2020) (citing *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005)); *In re J.R.*, 622 S.W.3d 602, 604 (Tex. App.—Fort Worth 2021, orig. proceeding [mand. dism'd]). "Whether a trial court possesses subject-matter jurisdiction is a question of law we review de novo." *J.R.*, 622 S.W.3d at 604 (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)); *see In re A.F.*, 653 S.W.3d 730, 742 (Tex. App.—Fort Worth 2019, no pet.).

In cases in which the Department requests conservatorship of a child or termination of the parent–child relationship, Family Code Section 263.401(a) requires the trial court to begin the trial no later than the first Monday after the first anniversary of the date the court rendered a temporary order appointing the Department as temporary managing conservator. *See* Tex. Fam. Code Ann. § 263.401(a). The trial court may extend the deadline if it finds that "extraordinary circumstances necessitate the child['s] remaining in the temporary managing

6

conservatorship of the [D]epartment and that continuing the appointment of the [D]epartment as temporary managing conservator is in the best interest of the child." *Id.* § 263.401(b). If the trial court makes those findings, the court may retain the suit on its docket "for a period not to exceed 180 days after the time described by Subsection (a)." *Id.* If the trial court does not begin the trial within the required time, the court's jurisdiction over the suit terminates, and the suit is automatically dismissed without a court order. *Id.* § 263.401(a), (c); *see In re G.X.H.*, 627 S.W.3d 288, 292 (Tex. 2021).

Notwithstanding Section 263.401's provisions, the trial court may retain jurisdiction under Section 263.403 if the court (1) finds that retention is in the child's best interest, (2) orders a Department-monitored return of the child to a parent, and (3) orders the Department as the child's temporary managing conservator. *See* Tex. Fam. Code Ann. § 263.403(a). If the trial court renders an order under Section 263.403, it shall "schedule a new date, not later than the 180th day after the date the temporary order is rendered, for dismissal of the suit unless a trial on the merits has commenced." *Id.* § 263.403(b)(2).

Here, as noted, the original dismissal deadline was February 26, 2024. *See id.* § 263.401(a). On January 25, 2024, the trial court signed the monitored-return order, which stated that the dismissal date was extended to July 24, 2024. *See id.* § 263.403(a), (b). Mother contends that this order did not extend the trial court's jurisdiction over Iris and the other two children who were not returned to a parent under that order.

7

We need not decide whether this contention is correct because even if the monitored-return order did not extend the trial court's jurisdiction over the Department's petition, the trial court retained jurisdiction because the Fosters had intervened in the case seeking termination of Mother's parent–child relationship with Iris and the Department's appointment as Iris's permanent managing conservator. Section 263.401(a)'s jurisdictional restrictions apply only to a trial court's jurisdiction over a "suit affecting the parent–child relationship *filed by the [D]epartment* that requests termination of the parent–child relationship or requests that the [D]epartment be named conservator of the child." *Id.* § 263.401(a) (emphasis added). "There are no similar restrictions on the court's jurisdiction over a termination suit brought by a private party." *In re L.D.R.*, No. 05-21-00369-CV, 2021 WL 5104376, at *3 (Tex. App.—Dallas Nov. 3, 2021, no pet.) (mem. op.); *see In re T.S.*, No. 10-23-00311-CV, 2024 WL 3371428, at *5 (Tex. App.—Waco July 11, 2024, pet. denied) (mem. op. on reh'g) ("Although the deadlines outlined in the Family Code are jurisdictional in cases brought by the Department, the same is not true for individuals who have intervened in a suit brought by the Department and seek affirmative relief."); *In re J.W.W.*, No. 09-23-00292-CV, 2024 WL 630869, at *11 (Tex. App.—Beaumont Feb. 15, 2024, pet. denied) (mem. op.) ("The jurisdictional restrictions and timeline contained in [Section] 263.401(a) only apply to suits brought by the Department—not private parties."). Here, the Fosters intervened in the case on February 23, 2024, which was three days before the original statutory dismissal deadline and thus while the trial

8

court had jurisdiction over the case.[6] *See T.S.*, 2024 WL 3371428, at \*5 ("Upon filing of the petition, an intervenor becomes a party to the suit for all purposes. If a party is nonsuited or dismissed, an opposing party's right to be heard on a pending claim for affirmative relief may not be prejudiced. The trial court retains jurisdiction over a pending claim for relief if the trial court initially had subject[-]matter jurisdiction." (citations omitted)). We therefore conclude that the trial court had jurisdiction to proceed with the trial in July 2024 and to order termination of Mother's parental rights to Iris and appoint the Department as Iris's permanent managing conservator. *See id.* at \*5–6; *J.W.W.*, 2024 WL 630869, at \*11; *L.D.R.*, 2021 WL 5104376, at \*3; *see also In re. Z.E.*, No. 05-22-01337-CV, 2023 WL 3595627, at \*3 (Tex. App.—Dallas

---

[6]As Mother points out in her reply brief, the Fosters filed their intervention petition under the original cause number, not the severed cause number. She asserts that because the Fosters misfiled their intervention petition, they did not intervene in the suit involving Iris before the trial court lost jurisdiction over the case. We disagree and conclude that despite filing their intervention petition under the original cause number, the Fosters effectively intervened in the severed cause. *Cf. Mitschke v. Borromeo*, 645 S.W.3d 251, 262–63 (Tex. 2022) (holding that new-trial motion filed under original cause number, as opposed to new severed cause number, was effective to extend the trial court's plenary power and the notice-of-appeal deadline in severed cause); *Sw. Airlines Pilots Ass'n v. Boeing Co.*, No. 05-21-00598-CV, 2022 WL 16735379, at \*3 (Tex. App.—Dallas Nov. 7, 2022, pet. denied) (mem. op) (applying *Mitschke* to hold that appellee's timely filing a Rule 91a dismissal motion bearing a cause number from an earlier-filed suit between the parties did not "render the motion to dismiss untimely" in current suit); *Torres v. Scott & White Clinic*, No. 03-04-00575-CV, 2006 WL 1126221, at \*2 (Tex. App.—Austin Apr. 28, 2006, no pet.) (mem. op.) (concluding that new-trial motion filed under old cause number instead of new severed cause number extended notice-of-appeal deadline in severed action and explaining that ignoring new-trial motion and response "because they were filed in the wrong cause number would elevate form over substance").

May 23, 2023, pet. denied) (mem. op.) (explaining that trial court retained jurisdiction because guardian ad litem had filed intervention petition seeking parental-rights termination before the dismissal deadline had passed). We overrule Mother's first issue.

### III. Ineffective Assistance of Counsel

As noted, the jury found that Mother had failed to comply with the provisions of a court order—her service plan—that specifically established the actions necessary for her to obtain Iris's return. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(O). Mother complains in her second issue that her appointed trial counsel was ineffective because counsel failed to plead that Mother was unable to comply with her service plan, failed to ensure that the issue of Mother's inability to comply was submitted to the jury, and failed to request that the trial court include inability-to-comply findings in its final termination order.

A trial court may terminate a parent–child relationship under Family Code Subsection 161.001(b)(1)(O) if the factfinder finds by clear and convincing evidence that the parent has "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child." *Id.* Section 161.001(d) provides a defense to Subsection 161.001(b)(1)(O):

> A court may not order termination under Subsection (b)(1)(O) based on the failure by the parent to comply with a specific provision of a court order if a parent proves by a preponderance of evidence that

10

> (1) the parent was unable to comply with specific provisions of the court order; and
>
> (2) the parent made a good[-]faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of the parent.

*Id.* § 161.001(d).

Mother asserts that her trial counsel was ineffective in three ways: (1) counsel failed to plead this defense in Mother's answer, (2) counsel failed to request that this defense be submitted to the jury or object to its absence during the charge conference and thus failed to preserve a charge-error complaint for appellate review, *see* Tex. R. App. P. 33.1; Tex. R. Civ. P. 272, 274, and (3) counsel failed to "request the inclusion of a finding related to Section 161.001(d)" in the trial court's final termination order.

Parents have the right to effective assistance of counsel in termination cases. *In re J.O.A.*, 283 S.W.3d 336, 341, 343 (Tex. 2009); *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). We review ineffective-assistance claims for both appointed and retained counsel under the *Strickland* standard. *In re D.T.*, 625 S.W.3d 62, 73 (Tex. 2021). To establish ineffective assistance under that standard, an appellant must prove by an evidentiary preponderance that her counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). The record must affirmatively demonstrate that the claim has merit. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

11

In evaluating counsel's effectiveness under the deficient-performance prong, we review the totality of the representation and the particular circumstances of the case to determine whether counsel provided reasonable assistance under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307; *Thompson*, 9 S.W.3d at 813–14. Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

*Strickland*'s prejudice prong requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial—that is, a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, an appellant must show a reasonable probability that the proceeding would have turned out differently without the deficient performance. *Id.* at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. We must ultimately focus on examining the fundamental fairness of the proceeding in which the result is being challenged. *Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069.

Here, even if Mother's trial counsel's performance was deficient, she has failed to show a reasonable probability that the proceeding would have turned out differently without counsel's deficient performance. For a trial court to terminate a parent–child relationship, the party seeking termination must prove two elements by

12

clear and convincing evidence: (1) that the parent's actions satisfy one ground listed in Family Code Section 161.001(b)(1); and (2) that termination is in the child's best interest. Tex. Fam. Code Ann. § 161.001(b); *In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020). The jury's affirmative findings under Section 161.001(b)(1) were not limited to an affirmative finding under Subsection 161.001(b)(1)(O) (failing to complete service plan)—the jury also made affirmative findings under Subsections 161.001(b)(1)(D) (endangering environment) and 161.001(b)(1)(E) (endangering conduct). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (O). The jury's Subsection 161.001(b)(1)(D) and (E) findings, coupled with the jury's best-interest finding, sufficed to support the trial court's termination order. *See In re R.H.*, No. 02-20-00396-CV, 2021 WL 2006038, at *13 (Tex. App.—Fort Worth May 20, 2021, no pet.) (mem. op.) ("Clear and convincing evidence of one pleaded conduct ground is sufficient to support a termination decision if coupled with sufficient best-interest evidence." (first citing *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); and then citing *In re D.M.*, 58 S.W.3d 801, 813 (Tex. App.—Fort Worth 2001, no pet.))). Mother has not challenged the sufficiency of the evidence supporting the jury's Subsection 161.001(b)(1)(D) and (E) findings,[7] much less explained how, in light of those findings, the trial's outcome

---

[7]Because Mother has not challenged these findings, we need not address the sufficiency of the evidence supporting them. *See In re N.G.*, 577 S.W.3d 230, 234–36 (Tex. 2019) (explaining that if one of the pleaded and found conduct grounds is based on endangerment—Subsection 161.001(b)(1)(D) or (E)—an appellate court must fully address that ground, *if presented on appeal*, based on the future collateral consequences of such a finding); *In re K.A.*, No. 02-22-00442-CV, 2023 WL 2429793,

would have differed if her trial counsel had ensured that the defense to Subsection 161.001(b)(1)(O) had been pleaded and submitted to the jury. Because Mother has not satisfied *Strickland*'s deficient-performance prong, we overrule her second issue.

## IV. Conclusion

Having overruled both of Mother's issues, we affirm the trial court's order terminating Mother's parental rights to Iris.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  October 17, 2024

---

at *4 (Tex. App.—Fort Worth Mar. 9, 2023, no pet.) (mem. op.) ("Because Mother fails to challenge the endangerment predicate grounds that were found by the trial court, we need not address the sufficiency of the evidence to support them.").